Next case we're going to hear this morning is Sartin v. McNair Law Firm. And Mr. Richter, whenever you're ready, we'll hear from you. Good morning. May it please the Court. My name is Ronnie Richter from Charleston, South Carolina. Here for the Plaintiff Appellant, Peter Sartin, in this matter. We're appealing the grant of malpractice case out of the District of South Carolina. Ironically, in March of 2011, attorneys from McNair, who is the defendant law firm in our malpractice suit, appeared before this very same court and argued on behalf of my client, their former client, Peter Sartin, the very same proposition that I will advance to the Court today. And what they said in that case of Travelers v. Tomini had erred and had exceeded her authority in December 2009 when she entered an order, quote, unquote, clarifying a prior sanction award that it issued in April of 2008 after the case had been dismissed with prejudice for more than a year. McNair contended that it was wrong for Judge Seymour to have shifted a monetary sanction of over $950,000 from the plaintiff in that case to their former counsel in that case under the authority of Rule 60A, again, more than a year after that case had been dismissed. And McNair argued that what Judge Seymour did was outside of the authority granted to her under Rule 60A. We agree with McNair. Their point of view and their position of the case has changed by virtue of the fact that Mr. Sartin has now brought an action against them. And while we're here today to appeal Judge Anderson's order, the threshold matter before the Court is still the same issue, and that is whether or not Judge Seymour exceeded the more than a year after the underlying case had been dismissed. Your Honors, if you look at the first of all, if we just begin with Rule 60A and what it does and what it does not do, unlike Rule 60B, which has a strict time limit of one year, 60A presumably has no time limit whatsoever. But its intent is to allow for corrections of clerical mistakes, oversights, and omissions. And the language of the rule itself is instructive. The Court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in judgment, order, or other part of a record, and the Court may do so on motion or sua sponte. So unlike Rule 60B-1, while there's no time limitation under Rule 60A, the intent and purpose of the rule is clear, and that is if we locate something within an order that is inconsistent with what was directed at the time the order was entered, the Court should not be constrained by time to come back and fix that mistake. And if you look at what circuits have done across the country, the application of 60A has been pretty consistent. The Fifth Circuit, for example, in the Durawood case, said that we're talking about the types of mistakes that a clerk could commit. The Seventh Circuit in the Blue Cross case said that we can't use 60A to go back and to do, quote, what should have been done. In this case, we've made the distinction between a judge changing his or her mind or getting really to the reviewing the substance of what they had done. Here, the district judge said, I always intended to sanction certain, and so that was an omission or oversight, and I'm correcting it. The argument you make now is that we have to look at the record and say she was misrepresenting her mind, state of mind, or we accept the statement of a judicial officer who said I made a mistake by, it was always my intent, and I want to correct that intent. And if we do look at the record and you look at the dialogue, she had very harsh words for Mr. Sarton all through that dialogue as if he were the guy that was doing things that court doesn't countenance, and then she just issued sanctions against, quote, plaintiffs, close quote. Clearly, plaintiffs is wrong in its normal term because that refers to parties. So she goes back and says, I really meant to hit Sarton at the time. If we were to agree with you, we would then basically have to say in some kind of opinion that the judge was misrepresenting now her statement when she said that was her intent. If it was, in fact, her intent at the time, then it seems to me she's within the scope of 68. I certainly respect that point of view, Judge Niemeyer. I think the distinction is that we have to accept that that's what she intended, but the case law, including Fourth Circuit case law, the Kosnovsky case, for example, the distinction that's drawn under 68 is the prohibition against allowing a judge to go back and do what should have or could have been done. Unquestionably, Peter was there. Unquestionably, it was within the inherent authority of the court to issue that sanction as against Peter, although he was not a party to the proceedings, he was an officer of the court. Unquestionably, she was upset with his conduct. And so what could have been done, what perhaps should have been done if that was her true intent, was that the sanction should have issued against Peter. And there was a time to address that with the court. And in fact, the parties intended to address it with the court. And if you look back at the record of appeal, the parties were not confused about what that order did and did not do. So in their motion, and I'm talking about Traveler's motion, Travelers moved to have the sanctions allocated after the sanction order issued. They filed initially a motion for clarification, the first motion for clarification, which was dismissed by text order. In that motion for clarification, this is what Traveler said about their view of that very same order. The motion stated that the sanctions have assessed, quote, solely against the plaintiffs without considering, without considering whether and to what extent such sanctions should be more properly assessed instead against their former counsel, Peter Sartin. So that's Traveler saying, look, Your Honor, we think that you got it wrong. We don't think you really intended this. I understand, you know, but you can't leverage all these arguments of counsel in the various changing circumstances to say those are what the case shows. I mean, have a judgment now issued by Judge Anderson, who's looking at the record, and he basically follows in with our decision in Rhodes v. Hartford, where we say if the judge is changing her mind, she can't do that under 68. But if she is correcting a mistake or omission, she can do that, and the distinction is based on her intent at the time. And so the question is, your argument has to be that her intent at the time is well expressed by the word plaintiffs and by her denying the review order for allocation of the sanctions. And the answer is those are good facts to point to. But then you also go back and look at the record, and it seems to me she never attacked the client. She only attacked Sarton in the trip to Italy. She, it was not a strategic matter. They didn't benefit from it. She basically said the lawyering was something that we don't do in this district, and I don't know if you do it, where you come from, but that conduct was totally unacceptable, and then she issued sanctions for the plaintiffs. Now, against the plaintiffs, the question is when she comes back later and said, I meant to have that focused on Sarton, there is some support, quite a bit of support for what she said. There is some support for what you say, too. I think the distinction, Your Honor, is, and I'm certainly aware of that other authority, it's an unpublished opinion of this Court, but I think the Caterpillar case is somewhat instructive as well, because in the Caterpillar case, that's where we dealt with a foreclosed shipping vessel, fishing vessel, and the issue that was never fully addressed, or I guess completely addressed, is did the fishing permits go along with the vessel as a part of the conveyance to the foreclosure, and the Court came back later to make it clear that it was intended that the permits convey, but that wasn't a part of the original order, and it would appear to be something more expansive than what Rule 60A would permit, but what this Court said about that circumstance was that it was perfectly within the Court's authority to perform the prior order to reflect a shared understanding, and I think that that's what is absent in this case, is that with regard to that first sanction order, there was no shared understanding about how it should have been issued against whom it should have issued, and in fact, it was Travelers itself who was saying, look, Judge, we need a full evidentiary hearing at some point in time on this. There are issues of attorney-client privilege that are going to be implicated. We're going to be made adverse to our counsel. Peter never had a presentation before the sanction of 950 was assessed against Travelers. That was a matter that the parties always contemplated would be kind of kicked down the road, for lack of better words, but, you know, let's preserve the status quo. We understand the sanction issued against us Travelers, but there's a date and a time where we would like a full audience with the Court where everybody can be represented, and all of the can be presented, and that's what Peter Sarton was deprived of when Travelers subsequently settled the case and dismissed it with prejudice. So even if that had happened, there was a mechanism to revisit that. We could have appealed that order to this panel. We could have asked for a clarification of that order within the time confines of the rules. What happened instead was it was only after the fee that the Tamini case was revived through a Rule 60A motion, again, more than a year after it had been dismissed with prejudice. And that's where we think the rule of law needs to control. There is a strong policy consideration that shouldn't be lost here, and that is the need for certainty of judgments, because if we take their position literally, it means that any judge, any time, can come back to any order and say, you know, in thinking about it, this is really what I would have intended to do. And to say that I'm clarifying my intent, to me, is an invitation to expand Rule 60A in ways that it was not intended. Thank you. Thank you. We'll hear from Mr. Stepp. Good morning. I may have pleased the Court. I'm Bobby Stepp. I represent the Applee-McNairn Law Firm in this case. Of course, it is our position that Judge Anderson properly granted summary judgment in the legal malpractice case because there was no proximate cause relationship between the missed deadline for the appeal and any damages suffered by Sartin. And that's because we believe, and we agree with Judge Anderson, who concluded that Judge Seymour properly exercised her discretion to amend her prior order under Rule 68. And the reason that that discretion was properly exercised, the Court has already put its finger on it, is because Rule 68 permits the district court... Well, I've put my finger on two sides of that issue. I mean, he has a lot to talk about, too. I understand, Your Honor. But I think when you look at all of the Rule 68 cases, the theme that emerges is that a court can conform a prior order to its original intent, and that that's something that is permitted, expressly permitted under Rule 68. And we think that's exactly what happened here, and that nothing more than that happened here. As Your Honor pointed out, it was never really in doubt whether the cause of the sanctions, regardless of who they were entered against, the sanctions were caused by the conduct of Sartin. And that's transparent when you look at the transcript of the hearing... Was there notice to counsel that he may be subject to sanctions? Well, Your Honor, we're all on notice all the time that we're subject to sanctions. The motion filed by Tammini... Was there not an opportunity to be heard? Well, Your Honor, he was heard at the hearing on the motion for sanctions. He appeared and argued that fully, and he was heard on the motion for clarification. So he had two bites at the apple. Where in the record does it make it clear that he was subject to sanctions? Well, Your Honor, the inherent power of the court to discipline counsel is just part of the process. Absolutely. But counsel ought to at least know that that's the issue. Well, Your Honor, my position would be that counsel did know that, and certainly should... Nobody else knew it. Travelers didn't know it. They wanted to allocate the damages, didn't they? Well, travelers wanted a lot of things. They wanted a postponed payment first and foremost. And so if you look at this case, you know, we're here now, and of course we see this through the lens of the issues between travelers and Sartin as its counsel. But Judge Seymour was sitting there with two opposing litigants in front of her who were contesting the substance of the case. And so when that first motion was filed, one of the main things that the motion sought was to defer payment of the sanctions until after the trial. Well, that clearly would have been prejudicial to Tamini. And so Judge Seymour, I think, properly had to take Tamini's interest into account at that point and say, no, I'm not going to do that. I'm not going to have an evidentiary hearing. I'm not going to slow this train down. Trial date had been set for the fall. This case had been, obviously, sitting around for a long time, and it engaged a lot of the court's time. So I don't think the denial of that motion certainly didn't preclude her from coming back under 60A, in which she could actually respond to, or under her inherent power to discipline counsel to revisit the question. When it comes back to her on the second motion for clarification, then the issue is framed as squarely between travelers and SART. And a lot of other things had changed, too. You've got this case pending in Texas, and Judge Seymour expressly said in the transcript on the second hearing, on the motion for clarification, that I don't want to have the Texas court guess about what I intended to do in my So the pendency of that action and the necessity of clarity for purposes of resolving an independent, separately pending legal action, I think certainly justified her action. Secondly, Sarton himself was taking the position that her order was unclear. Now, it's interesting because he didn't say her order exonerated him. He said it was unclear. So you had Sarton taking that position in Texas, and indeed he was taking that same position in Texas. You've got a motion made by a party to clarify. You've got a pending action in Texas. And I think all of those circumstances come together to permit Judge Seymour to exercise her discretion under 60A to clarify what she intended to do to begin with. Judgment was satisfied at that point, wasn't it? I beg your pardon? Was the judgment satisfied at that point? Yes. So that's another point. At no time, I mean, part of the sort of unspoken theme, I think, in this case is that somehow Judge Seymour changed her mind. And we know Rule 68 doesn't permit you to change your mind. I understand that. But she didn't change her mind. She had never entered an order that exonerated Sarton for the consequences of his conduct. She had never said that he was not subject to sanctions. She simply hadn't imposed them on him. And in fact, by because the sanctions had already been paid. So she's simply adding something to the dispute between Travelers and Sarton about who's ultimately going to be responsible for that. And it's playing out in Texas. But it's not like she suddenly imposed a judgment on Sarton for $951,000. She did not do it. She didn't make them payable to the court. And interestingly, she didn't even relieve, she didn't amend her prior order to make it possible. She simply amended her order to clarify her intent, both that it was Sarton's conduct that resulted in the award and that Sarton himself should be personally liable. But you do agree, though, that if the case had been properly and timely appealed, that and he prevailed here, that that would be a financial benefit to him, would it not? No, Your Honor, I'm sorry, I don't agree with that. I don't think he was ever exposed, except with respect to Travelers. Wasn't that the offset to his fee claim down in Texas? In other words, if there was no responsibility for that, then there would be no offset against his claim? Well, he was already, I understand your point. It certainly was evidence against him. I'm not going to tell you it wasn't evidence against him. I think that's clear that it was. But he was already being sued for that. In fact, this record reflects that on the day the order came down, the next day, imposing the $951,000, Travelers wrote Sarton an email and a letter and said, we're holding you responsible for this and we intend for you to pay it. So he knew from the day he walked out of that courtroom of the sanctions here, that he was exposed at least to his client, if not to the court, for the consequences of his conduct. So putting that order in didn't change that. He was already litigating that. It was additional evidence, but I would suggest that's all it was. Yeah, but in the context of the malpractice case within the case, that was important to him to get it resolved. Because in fact, if that 68 clarification that turned out bad for him was wrong, then that would help him in what he was fighting. It would have been, it would have been a factor, your honor, but I don't, I hardly think it would have been to show that it was impossible for him to win on appeal, but winning would benefit him. It would have benefited him. I don't think it was dispositive of his liability to Travelers, however. I mean, that would have played out. Travelers was already asserting in that case that it was his responsibility. And he was saying that it wasn't. But if the court couldn't clarify it and remain the judge denied $50,000 against the plaintiffs, there'll be the end of Travelers' position. I don't believe so, your honor. I respectfully disagree because I think he had fiduciary to them. And regardless of that order, if they could show that the conduct that resulted in the award was his responsibility, then he's going to be liable to them for breach of fiduciary duty, for malpractice, for whatever. So I simply don't think evaporating this order would have changed his exposure. It changed the evidence. He may have made out of one that battle, correct? That's correct. That's right. But the point of it was that he certainly could not have been surprised that Judge Seymour ultimately would clarify her order. You know, the question of ambiguity is an interesting one because my friend, Mr. Richter, talks about the Caterpillar case. And the Caterpillar case involved an ambiguity about what the term fishing permits meant, whether it included a specific kind of fishing permit. But this is not a case of ambiguity, counsel. This is clear. It says $950,000 against the plaintiffs. There's no ambiguity there. The ambiguity, your honor, I would suggest was whether in her original order Judge Seymour had made it clear that the $951,000 award against the plaintiffs was based on Sarton's conduct or not. It doesn't matter. She doesn't have to do that. The judgment stands against who it is against. Well, but that wasn't an exoneration. I guess my answer to that was... It doesn't have to be an exoneration. Judgment is not for exoneration. It wasn't a criminal case where you'd be guilty or not guilty. The question is, based on this order, who is responsible for a money judgment? It's clear. The plaintiffs, period. There's no ambiguity there. I agree with that, your honor, but I would simply say it doesn't preclude her also finding that counsel was responsible for that. She never reached the determination... Well, yeah. 6 to 8 doesn't allow you to come back and say, well, you know, maybe... That's the whole question. You can't make you... You can't say, well, it really should have been shared or it should have been just one person. But I must address the issue. You said ambiguity. There's no ambiguity. Well, I think there was, and I think Judge Seymour thought there was, and that's why she addressed the issue, and I think that's why she said she was trying to do it for the benefit of the Texas court. So she... No, I thought she did because she said there was an error. An error is not ambiguity. No, no. She said that the order didn't conform to her original intent, and she cited to the transcript to support that, and she recited in her order, which is at least entitled to great deference, I would think, that that's what she was doing, and this is what she had intended to do all along. So I don't know that she ever said it was an error, and again, I don't think it represents her changing her mind. I think at the time... But didn't the court look at this another time in terms of refusing the allocation that was proposed by Troutland? Well, she... So she looked at it again and didn't change it. Well, she did, but nor did she make a finding at that point that Sarton did not bear any responsibility. That motion, as I said, had a lot of moving parts to it. The number one part of it was to delay payment until after trial, and that's, I think, why it got denied, and then the court was called upon to have another hearing, to have an evidentiary hearing. But think about it. What was the motion? What was the exact motion? It was a motion made under Rule 54 to clarify her order and to allocate between travelers and counsel. Okay, to clarify her order and to allocate, and what was the ruling? She denied it. Denied both? Denied it in toto, by text order, without any further explanation. All right. So she had before her, obviously then, a $950,000 judgment against the plaintiff. When asked to clarify and to allocate, she denied it summarily, correct? That is correct. But then she looked at the same order and still didn't make any changes in it. Well, but the point, I think, as I've tried to make is, at that point, that motion implicated the rights of Tammini. We're not just talking about issues between travelers and his counsel. We got the defendant in the case that made this extensive motion for sanctions and, frankly, cataloged a litany of horrors that I hope I would never see during the rest of my career, in a case I'm involved in. And she responds to that. She reimburses them for fees and costs that they incurred. She enters an order that's very critical of the conduct. As Judge Niemeyer said, she had some pretty harsh things to say about Sarton. And then here comes the party that she's just held responsible to say, well, let's put this off. Let's put this off and go after trial. Why don't you have another hearing and we'll worry about this later? I think she properly said, no, thanks. I'm not going to do that. But when it comes back, and this is the big difference, there are three major differences when this issue comes back the second time that I think makes it completely appropriate for her to have addressed it under Rule 68. Number one, Tammini's out of it. So now what she has framed before her are simply issues between travelers and counsel, number one. So there's no prejudice to Tammini in what she does. She's not constrained by that. Number two, you got the Texas case pending. And you've got her own statement that she wants to benefit the Texas court so that they don't have to guess at what she intended. And third, you've got Sarton's own contention that her order was ambiguous. Now, Your Honor said it wasn't ambiguous. Well, what we think is not important. Sarton was taking the position it was ambiguous. He was standing before the district court saying, your order is defective. It doesn't say that all this was based on what I did. And I'm taking that position in another proceeding. I think under those circumstances, Judge Seymour was completely justified to clarify her order and to conform it to her original intent, which is exactly what she did. And in so doing, I think she was operating completely within the parameters of Rule 60A. And on this record, there's no explanation why the court, when asked to clarify before, denied that. It's simply a text order denying it, Your Honor. That's correct. That's correct. You know, I can understand, Your Honors, that any court, this court or any other court, would not want to see Rule 60A pushed to the point that a district court, years after a district court, would just wake up one day and go, you know, I think I did that wrong. I want to redo it. That's a legitimate concern and certainly not, I believe, what 60A was intended to do. But, you know, there are a lot of differences between this case and that sort of situation that make this case almost unique and which I think fully justify a very flexible approach under 60A to try to get to the heart of the matter. The first thing I want to point out is that this is a collateral matter. This order, imposing sanctions to begin with, was not the judgment of the court on the merits of the case between the litigants. So it's a collateral matter. And under Kosnovsky and other authorities of this court, 60A is appropriately used to address a collateral matter. Yeah, but collateral, but this is a huge, huge sanction, almost a million dollars. That's right, Your Honor. That's a lot of money. It is a lot of money. There's no question about it. As Judge Neumeier, I think, put the question, it puts parties in a very difficult situation because you're left to say, well, the judge is not telling the truth. In other words, how do you defend it? It would be almost, if you put that, you know, sort of as a stone you got to push up the hill, you almost could never push it up the hill at any time. It would undermine finality because you say, and this is not the district court, but I'm saying, how would you ever defend it? Okay, I said this, but this is what I meant. In the story, appellate court would say, well, that's it. What would be the significant review that we would have on that? Well, Your Honor, in this case, of course, what I'm saying, it didn't disturb the judgment on the merits. It wasn't sua sponte. The court didn't just wake up and decide. But it was the second time seeing it and the first time that it had a chance. Well, if she had, I mean, I would agree with you. If she had entered an order anywhere along the way that said, I'm sanctioning plaintiffs for what plaintiffs did independent of any issues about the conduct of their counsel, and then she came back and entered this clarification order in the face of a prior ruling, I would be hard pressed to stand here and tell you that didn't represent that she had changed her mind. But those are not our facts. And so it's not our situation. It is collateral. She never had made a rule, a prior ruling, about Sarton's conduct specifically. Clearly, the conduct was sanctionable. I mean, and under Rule 68, or if that doesn't go far enough under the inherent power of the court, she clearly had the authority to discipline counsel and to sanction counsel in the interests of the administration of justice, of nothing else. The Texas case is also another big distinction. So this is not simply a hypothetical issue. There's another proceeding out there. I think, if I can dissect it and get away from any kind of personal and any kind of thing that what seems to be the more problematic is not necessarily whether she meant him to be included. I agree with you. It seemed like the record, she more than made it clear that I'm upset with you. As you say, rightfully so. But it seems like it's the allocation of all of it at that time against him is what is the question. Because it's kind of like you say, OK, I'm going to wait until, even the way you are, you say, well, now we got this changed. And he is out of the case. Now all those things, by the way, we're dusking clear. Now it's one-on-one, mano-a-mano, just travelers and him. Now I'm saying, you know what? I think all of it is yours. That seems to suggest the allocation, but as to whether or not I meant for him to have some of it, clear. But the allocation part, that's the part that I'm not sure about. I'm sorry, but the allocation part wasn't challenged on appeal. And she had that record before her. That's the other thing. She didn't have to come in and make a new record and take new challenge. We don't know. A timely appeal wasn't filed, was it? Well, no, it was filed out of time, and it was never decided. That was of no moment in it. That's why we're here in terms of that aspect of it. It was pending, and it got dismissed because Sarton instructed McNair to dismiss it. I mean, that's a whole other issue that we alternately argued for summary judgment. I mean, how can you sue the law firm when they're in the midst of an appeal that might remedy the thing that you consider to be how they prejudice you, and you tell them to stop, and then you sue them anyway? But that's another issue. But Judge Seymour obviously felt, based on the record she made at the time she entered the sanctions award, that she had all the information she needed in order to allocate the award. In any event, the specific allocation is not an issue in this case and was not a factor in Judge Anderson's deciding to grant summary judgment. You know, the final... Her comments during the issuance of sanctions don't suggest that the client participated in any way in the conduct. It wasn't a strategic decision that was discussed. It was personalized. It was all conduct of counsel. Thank you. My time is up. I appreciate it. Okay. Thank you. Mr. Richter. You know, the Texas cases should be of no moment whatsoever. The federal court in Columbia had no interest in what was going on in a state court case in Texas. You know, the fact of the matter is an invitation was extended to Judge Seymour, and it's an invitation she should have respectfully declined. I mean, it was outside of the time period allowed for the rules to revisit that order, and that the real matter before the panel... You say it was outside the time? It was outside... Well... She had a right under 68 to do that, time-wise. Yes, Your Honor. I guess that's the point on which we respectfully disagree today is whether or not she had the authority under Rule 68. Well, that's... No, that's the issue. Yes, sir. I think the timing is not out of line. Yes, sir. Yeah. The... I think that the true issue, the central issue is whether or not what was done in that clerical... Obviously, Rule 68 is without time limit to revisit orders and make clerical adjustments if it's necessary. It is not there to make substantive changes. It is not there to litigate matters that were not originally litigated. What if, Your Honor, the judgment was entered for $10,000, and all during the discussion, the court was talking about a million dollars, and the judgment sits on there for $10,000, and about a year and a half later, execution on it, and the defendant relies on the $10,000, and everybody says, oh, she was talking about a million, and they go back and file an order to clarify under 68. She said, yeah, that's a mistake, a clerical mistake. It should have been a million. Yes, sir. That's substantive, isn't it? From $10,000 to a million? I don't... I do think that that's the type of clerical mistake that Rule 68 was intended to cure. But I'm not sure substantive... I know some cases that talk about substantive, but I think it goes more to the nature of the change or the relief under 68. Yes, sir. In other words, we don't want judges rethinking orders. We don't want them revisiting their judgments. We don't want them changing their mind and starting a whole new process. That has ended. But the clerical error is the most typical, the $10,000 to a million. That's pretty clear. Yes, sir. This one comes a little more in the gray area, except the judge said, I conformed it to my intent at the time, and that was a mistake. Your Honor, there's... respectfully, I think there's another important distinction here. But before she could do that, if you remember at the time of the first motion for clarification, what Travelers asked for was an opportunity for a full evidentiary hearing. And they said repeatedly to the court, look, you've not considered this, how it should be allocated between us and counsel. And in order to make that decision, there needs to be an evidentiary presentation. I have two problems with that argument, though, because it would seem to me, and I've tried to put myself in her shoes, if she didn't realize she didn't give Sarton, she just did sanctions, a $950,000, all of a sudden she's got a motion to allocate it between the client and the attorney. I don't think that was ever her intent. There's not even an inkling in the dialogue that suggests that the client was responsible for any of that misconduct. And the second thing, it was going to cause a hearing that delayed the judgment. And so she says, there's no allocation in this case, and there's no delay, which are both correct. What she didn't realize is that the person that she issued sanctions against was, quote, plaintiffs, and instead of against Sarton. But I think her dialogue is mighty revealing. I mean, it's not a reconstruction of it. She's just point blank. She goes one point after the other, what was wrong with the attorney's conduct, and nothing implicated the client. Your Honor, but what's absent at the time of the initial sanction, the $951,000, it's clearly against plaintiffs. There's no ambiguity in that word whatsoever. That's right. That's where she issued it, and my guess is that it was entered mechanically because the motion was against plaintiffs. Well, I do think there was a written order, but what was- Yeah, it was, but the motion for sanctions was a motion against plaintiffs with sanctions. And it described all this conduct as the plaintiff's conduct, but the court just granted motion for plaintiffs as the way it was phrased. But when she was asked to consider it, not as an allocation, because I don't think she ever had an allocation problem in her mind. I think the question that finally came and said, the aha moment came when plaintiffs may not have included attorneys. Your Honor, I'm almost out of time, but- Yeah, go ahead. I would like to answer your point, and I do think it's central to our discussion. What's absent at the time of that initial sanction was the evidence, was the ability for Peter Sartin to speak. Now, there's no question that in her commentary, she was upset with him. She found his conduct sanctionable. But when she issued that order that said, I find against the plaintiffs $951,000, Peter Sartin is still in an attorney-client relationship. He's still bound by confidentiality. He cannot present his point of view. It's impossible that the allocation could have been litigated because he had not had an opportunity to speak, and that opportunity did not present itself until more than a year after the case is dismissed with prejudice, when we now have the second motion for clarification. Was he the one that argued the sanctions motion? McNair represented him at the sanctions motion, and at the clarification. No, I'm talking about the sanctions motion. Your Honor, I don't want to misspeak it. I believe by that time, Nelson Mullins had joined as counsel, and that they were the ones advancing the arguments, but I could be mistaken on that. He clearly stepped back as counsel of record, but he did not leave the trial team. In our case, it says that he was led to remain on the team until the very end of the case. He even had his airline tickets to attend the trial of the matter. But it's hard to say that this is clarification when the court did not have before it the body of evidence that ultimately led to the clarification order from which we now appeal. And what was absent the first time, again, was Peter Sarton's ability to speak. Now, ultimately, according to Judge Seymour, it didn't change the equation for her, but she didn't have the benefit of that evidence. He didn't have the benefit of the right to be heard. And that's not a clarification. That's a litigation of a matter that was never before heard. He didn't have the right to be heard when the sanctions were imposed. I mean, the sanctions were clearly directed at his conduct. He's either sitting there or he's reviewing it or discussing it with his client. They're a team, and the conduct is just laid out in detail, and it's all his. But, Your Honor, if the original sanction had issued against Peter, he would have had the right at that time to seek appeals. But his sanctions hadn't been entered. He had, in other words, the sanction motion was being considered by the court. He knew it was directed at him. Now, the way it was ultimately entered didn't include him. It did not. But he knew he was in the firing range. He certainly gathered the court was not happy with him. I think, just to be fair, the motion was sanctions against the plaintiffs, was it not? It was, Your Honor. Not the lawyer. And I think, just nearby, well, anyway, I think you made it very clear. I think I understand what you're saying. For example, in this record, much was the made of the fact that he went to Italy and left prematurely. Yes, Your Honor. Okay. On his face, that might be, it is one of the sanctions. But, as counsel said, there might be the answer might relate to what your client told you to do. But you're standing there. You have a client privilege. The motion is against your client. You're not, at that point, at liberty just to say, well, Your Honor, since now I know it's against me, let me tell you why I left Italy. Because my client told me, I'm not, this is hypothetically, that's what it, that's the whole point is. You can say, no, I left because they hit me with this bombshell. And the only thing we could do at this point was to regroup and get out of Italy until we could get together. He had no chance to do that. There was no motion against him for sanctions. And to say that now, that's the point in terms of lawyering, in terms of fair to a lawyer. He didn't have a chance to do that. Your Honor, respectfully, we do think it's Judge Seymour saying that this is what I could have, should have, would have done. And it's far beyond a clarification. Thank you. Thank you, Mr. Step. We'll adjourn court for the day and then come down and brief counsel. Thank you. This honorable court stands adjourned until tomorrow morning at 930. God save United States and this honorable court.
judges: Paul V. Niemeyer, Roger L. Gregory, Henry F. Floyd